758 F.2d 500
 The SUPERIOR OIL COMPANY, a Nevada corporation, Plaintiff-Appellee,
v.
WESTERN SLOPE GAS COMPANY, a Colorado corporation,
Defendant-Appellant.
CONTINENTAL OIL COMPANY, a Delaware corporation, Plaintiff-Appellee,
v.
WESTERN SLOPE GAS COMPANY, a Colorado corporation,
Defendant-Appellant.
 Nos. 82-2190, 82-2191.
 United States Court of Appeals,
Tenth Circuit.
 March 20, 1985.
 
 James R. McCotter, of Kelly, Stansfield & O'Donnell, Denver, Colo. (Laurence S. Lese, Denver, Colo., with him on the brief), for defendant-appellant.
 Robert C. Hawley of Dechert, Price & Rhoads, Denver, Colo. (Gretchen VanderWerf, Denver, Colo., with him on the brief), for plaintiffs-appellees.
 Before McKAY, SETH and DOYLE, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 This case was before us and our opinion appears at 604 F.2d 1281 (10th Cir.1979). The Superior Oil Company and Continental Oil Company sued Western Slope Gas Company asserting a breach of a long term gas purchase contract. The gas sold was intrastate gas. The dispute centered on the favored nations clause in the agreement and whether it was triggered. The case was remanded and considered on motions for summary judgment.
 
 
 2
 The basic issue considered was whether the favored nations provision was against public policy in Colorado. The trial court decided it was not and granted Superior's and Conoco's motions for summary judgment. 549 F.Supp. 463. Western Slope has taken this appeal.
 
 
 3
 The details of the contract and the facts are described at 604 F.2d 1281 and need not be repeated here. On the first appeal all issues were decided except the public policy question.
 
 
 4
 We must conclude that the favored nations clause was not against public policy. This issue was considered by this court in Kerr-McGee Corp. v. Northern Utilities, Inc., 673 F.2d 323 (10th Cir.1982), arising in Wyoming, and the clause found to be valid. We apply the analysis there made. There is nothing different in the Colorado setting to lead to a different result.
 
 
 5
 The Colorado legislature has enacted as part of its Oil and Gas Conservation Act a provision which in substance conforms its pricing policy with that of the Natural Gas Policy Act. Colo.Rev.Stat. Sec. 34-60-102(2) (1984). Thus:
 
 
 6
 "It is further declared to be in the public interest to assure that producers and consumers of natural gas are afforded the protection and benefits of those laws and regulations of the United States which affect the price and allocation of natural gas and crude oil, including the federal 'Natural Gas Policy Act of 1978'...."
 
 
 7
 The NGPA permits the continuance of price escalation clauses in intrastate gas contracts. Also the Act allows the states to restrict the operation of escalation clauses in providing that nothing in the Act shall affect state authority to enforce a maximum price for first sales which does not exceed the applicable maximum lawful price (15 U.S.C. Sec. 3432(a)). Colorado has not exercised its authority which would restrict the operation of favored nations clauses. This was a factor also considered in Kerr-McGee v. Northern Utilities, Inc., 673 F.2d at 327. We there observed that Wyoming had not enacted such a statute. In view of the recognition and adoption by Colorado of the NGPA policies, we must conclude that the favored nations clause here concerned is not contrary to the public policy of Colorado. We thus agree with the trial court.
 
 
 8
 AFFIRMED.
 
 
 9
 WILLIAM E. DOYLE, Circuit Judge, dissenting.
 
 
 10
 In the above case Superior Oil Co. and Continental Oil Company sued Western Slope Gas Co. in an effort to gain judicial interpretation of a "favored nations clause". This was also referred to as an "indefinite price escalation clause" in a gas purchase agreement. The United States District Court for the District of Colorado found for Western, but the Tenth Circuit reversed and remanded. On remand, the district court found for Superior and Conoco. It held that the interpretation that Superior and Conoco sought was correct and that the clause was not void as against public policy. Western has appealed.
 
 
 11
 On January 3, 1984, Superior and Conoco entered into a 20-year gas purchase agreement with Western, in which Superior and Conoco agreed to sell and Western agreed to buy natural gas from western Colorado leasehold interests. The agreement contained a "favored nations clause," which provided that if Western ever paid a higher price to other sellers of natural gas in a three-county area, it would have to pay that same price to Superior and Conoco.
 
 
 12
 The favored nations clause was triggered several times in the 1970s. However, a dispute arose over the interpretation of the clause. Western has argued that the phrase "other conditions of sale" in the clause meant that it must pay Superior and Conoco the higher price only if the "vintage" (date on which drilling of the well began) of Superior and Conoco's wells was the same as the vintage of the wells of the other producers paid the higher price. Superior and Conoco brought suit. The district court granted Western's motion for summary judgment, holding that vintaging was a factor included in the favored nations clause. The Tenth Circuit reversed and remanded in Superior Oil Co. v. Western Slope Gas Co., 604 F.2d 1281 (10th Cir.1979) ("Superior I"). On remand the district court held (1) that the question of vintaging was no longer before it because the Tenth Circuit had resolved that issue, and (2) that the favored nations clause, so interpreted by Superior and Conoco, was not void as against public policy. The court awarded Superior and Conoco $8.5 million in damages and ordered Western to pay Superior and Conoco the highest price paid to other producers in the area. And from that Western seeks a review and reversal.
 
 
 13
 I am sorry to have to do so, but I cannot join in the opinion of Judge Seth and I therefore dissent, and I shall my set forth viewpoint very briefly.
 
 
 14
 Western contends that the clause in question violates federal public policy. It admits that the Natural Gas Policy Act (NGPA) currently allows such a clause, but argues that the relevant time period for determining public policy is 1964-1974, when the dispute arose, and when the NGPA had not yet been enacted. The law of that period, Western maintains, establishes that indefinite price escalation clauses, such as the favored nations clause at issue here, were contrary to public interest. Western argues that the consumers of natural gas will be harmed by Superior and Conoco's damage awards because Western must pass on to those consumers the costs of these awards.
 
 
 15
 Western also argues that the favored nations clause violates the public policy of the State of Colorado. It maintains that the district court erred in finding that the Colorado legislature adopted the NGPA position when it enacted the Oil and Gas Conservation Act. It further argues that the Conservation Act did not endorse application of the NGPA for all purposes. In the absence of any express legislative action or any controlling Colorado case law, Western urges this court to follow the views of the Colorado Public Utilities Commission ("PUC"). Western admits that the PUC does not regulate the intrastate sales of gas which are here at issue; nevertheless it argues that PUC's views are indicative of Colorado public policy. The PUC has stated that favored nations clauses are consistent with public policy only if vintaging is included as a factor.
 
 
 16
 The position which I take is that the regulatory approach based upon the fixing of rates by the Public Utilities Commission has proven itself to be a protector of the public interest, whereas the favored nations clause proposition guarantees that rates will be increased regularly at the behest of utilities. It is very probable that there will never be a reduction of rates if this formula is employed.
 
 
 17
 The history of regulation goes back quite a good ways. Perhaps the earliest of these cases is the Supreme Court's decision in Munn v. Illinois, 4 Otto 113, 94 U.S. 113, 24 L.Ed. 77 (1877). In that case the rationale was very well set forth. Chief Justice Waite wrote for the Court and he outlined why there was a need for protection of the consumers in this situation. Id. 94 U.S. at 133-136.
 
 
 18
 There are certain products on the market which are dependent upon the fixing of rates because there is no competition to hold the rates down; it is not competitive at all. Moreover, the product sold is a natural resource in which every member of the population has an interest. On the other hand, this favored nation formula is designed to avoid the results of regulatory agencies. In this day and age, the price of every product, even those which are competitive, is rising regularly. If we permit these "favored nations clauses" to be enforced, there will surely be a continuous skyrocketing of prices. The consumer will find no protection whatsoever from the federal policy of regulating natural gas. The result is that the consumer will bear the increased costs from the favored nations formula.
 
 
 19
 But I need not go further. It is sufficient to say that the favored nations doctrine is contrary to the interests of the consumers, and thus it is an unhealthy proposition. And for that reason I disagree with the majority opinion, and time will demonstrate that what has been suggested here is true.
 
 
 20
 Judge Barrett of this court wrote a very scholarly opinion in his concurring opinion to the early case. This decision was rendered on August 13, 1970, and was argued March 13, 1979. Judge Jack Miller, a visiting judge from another circuit, wrote the principal opinion. Judge Barrett's opinion is scholarly. It treats all aspects of this issue. I certainly endorse everything that Judge Barrett said. See Superior Oil Co. v. Western Slope Gas Co., 604 F.2d 1281 (10th Cir.1979).
 
 
 21
 For the above reasons I am unable to join the majority.
 
 McKAY, Circuit Judge, concurring:
 
 22
 I fully concur in the per curiam opinion. I am persuaded that in context the Colorado legislature settled the issue of Colorado public policy when it adopted Colo.Rev.Stat. Sec. 36-60-102(2) (1984). The responsibility rests with them to alter that policy if they conclude that it was erroneous.